# THE SUPREME COURT

OF

# PENNSYLVANIA.

6 WS 147
217    ¹191

EASTERN DISTRICT, DECEMBER TERM, 1843.

## Schuylkill Bank *against* Macalester.
## Same *against* Wager.

A discontinuance can only be entered by leave of the court, and though the practice is to do it without such leave first granted, yet the court on cause shown will refuse leave after it has been entered.

Sureties in a bond of indemnity have a right to require the obligee to bring suit on the bond in case of a breach, and if such suit is begun and there is a fund of the principal's to pay the debt, the court will refuse leave to discontinue, where a rule of reference has been taken out by the defendant, though the arbitrators had not been appointed when the discontinuance was entered.

IN these cases actions of debt were respectively instituted in this court by the Schuylkill Bank in the city of Philadelphia against Hosea J. Levis & Charles Macalester, and Hosea J. Levis & Peter Wager on two bonds for $10,000 each, in which Macalester & Wager were sureties for the faithful performance by Levis of his duties as cashier of that bank. The writ was returned served on Macalester & Wager and *nihil habet* as to Levis. The defendants entered a rule of reference. On the morning of the day fixed for the appointment of arbitrators, and before they were appointed, the plaintiffs filed a discontinuance and paid the costs

[Schuylkill Bank v. Macalester — Same v. Wager.]

in each suit. The arbitrators were, notwithstanding, appointed, (the prothonotary acting for the plaintiffs) and were about to proceed, when a rule was taken by the plaintiffs to show cause why the appointment of arbitrators and the subsequent proceedings should not be set aside. The arbitrators subsequently made an award for the defendants.

It appeared that Hosea J. Levis made a voluntary assignment for the benefit of creditors, in which there was a preference to indemnify his sureties. The assignee reported assets sufficient to pay all claims upon the estate of the assignor and a surplus. Auditors were appointed by the Common Pleas to settle the first and second accounts of the assignees. The Schuylkill Bank appeared before both audits, desiring it should be particularly noticed that they only appeared as claimants for what they called the " Bethel Fund," and appeared as claiming in no other capacity. They claimed the " Bethel Fund" independently of the assignment, but nothing under the assignment. The plaintiffs were notified by the counsel for the sureties as to the time of the meetings of the auditors, before whom they were required to produce the bonds in question, and to show what claim, if any, they had against the sureties in the bonds; with a proviso that the notice was not to be construed as an admission by the sureties of their liability on the bonds. They subsequently received notice to appear and substantiate their claims, if any they had, against the sureties, as there was a fund in the hands of the assignees for distribution, and the first preference in the assignment was to protect the sureties from loss by reason of their suretyship in the bonds. The plaintiffs were further notified that on their failing to comply with this requisition, the sureties would hold themselves discharged from liability to the plaintiffs on the bonds. To the last notice the bank answered that suit had been instituted by them against the sureties in the Supreme Court, that they regarded it as incumbent on Macalester and Wager, as sureties, to require of the assignees and to ask of the auditors that any funds which might under the assignment be applied to the indemnity of the sureties, should be retained until the claim of the bank on the sureties in the suits at law were determined, and that the bank did not consider itself bound to submit its claim to any other than the tribunal it had chosen.

*Henderson* and *Dallas*, for the plaintiffs, now showed cause why the appointment of arbitrators, &c. should not be set aside; and contended that the plaintiffs had a right to discontinue, on payment of costs, at any time before the appointment of the arbitrators, though a rule of reference had been previously taken out by the defendant and duly served. The jurisdiction of the court is not devested until the appointment of arbitrators. *Camp* v. *Bank of Owego*, (10 *Watts* 130). In *Mechanics' Bank* v. *Fisher*, (1 *Rawle*

341), relied on by the defendants, the discontinuance was not allowed, because it tended to harass the defendant, and it was entered by the prothonotary's clerk without any authority. A plaintiff may discontinue after judgment by default before a writ of inquiry. 1 *Miles* 158; 2 *Arch. Pr.* 208; 2 *Sel. Pr.* 335. In 6 *Cow.* 385, a verbal discontinuance was held sufficient; and in 12 *Wend.* 191, a plaintiff was allowed to discontinue without payment of costs.

The refusal of the plaintiffs to go before auditors and claim out of the assets in the hands of the assignees, after notice to them by the sureties to do so, discharges the sureties entirely, and they are protected by these circumstances for ever from liability, without insisting on an award or judgment in their favour.

*Randall*, for the defendants, was stopped by the court.

PER CURIAM.—A right which can be exercised only by permission, is no right at all; and all the cases show that a discontinuance must be founded on the express or implied leave of the court. In England this leave is obtained on motion, in the first instance; and here it is taken without the formality of an application, but subject to be withdrawn on cause shown for it: that is the whole difference. The act, when the propriety of it is contested, must, in the one shape or in the other, have the sanction of the court. Are the circumstances of this case, then, such as to demand our interference? Messrs Wager and Macalester are sureties, and consequently entitled to require that the suit be prosecuted to a conclusion, not only to put them out of suspense, but to give them the ulterior benefit of the judgment as a security. Had the plaintiffs not brought suit, they would have had a right to say, " begin;" but, having begun, they have perhaps a greater right to say " go on;" for it would be a fraud on them to put their vigilance asleep by the institution of an action, subsequently withdrawn, which would cause them to lose just so much time. The plaintiff admits that the sureties are discharged in equity, not only by the discontinuance, but by the existence of a fund within their reach in the hands of the principal's assignees; and why not give up the evidence of the debt? The sureties have a right to be discharged not only in equity but at law. The plaintiff is therefore bound either to enter a *retraxit*, which would make an end of their legal liability, or proceed to judgment in order to have the money which awaits the sureties' order in the hands of the assignees, paid into court and satisfaction entered. These are considerations which compel us to say he must proceed.

Rules discharged and discontinuance set aside.